IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THE PREMISES LOCATED AT 608 EAST AVENUE F AND 1212 PARK AVENUE, BISMARCK, NORTH DAKOTA ) ) ) ) ) ) | Case No. 1:24-mj-728 |

## AFFIDAVIT

## UNDER SEAL

Your Affiant, David Stewart, being duly sworn, deposes and states as follows:

Your Affiant David M. Stewart is a Detective for the Bismarck Police Department. Your Affiant has been with the Bismarck Police Department since May 2012. Your affiant is currently assigned to the Metro Area Narcotics Task Force as a Drug Enforcement Administration (DEA) Task Force Officer (TFO). While employed as a Police Officer, your Affiant has received training to including, Highway Drug Interdiction, Advanced Road Side Impaired Driving Enforcement, BCI Basic Investigators Course, Advanced Narcotic Raids and Undercover Survival course, and Drug Enforcement Administration (DEA) Basic Drug Enforcement Investigator's School. Your affiant completed the North Dakota Law Enforcement Academy 2012. Your Affiant has attended a two-week training sponsored by the DEA in the investigation of narcotics offenses including: the identification of substances, the methods of narcotics trafficking, the manufacture of narcotics, and methods used by those engaged in these activities. Your Affiant has also received training for the use of informants, and narcotics investigation techniques. Your Affiant has also been instructed in the preparation of and service of search warrants and has assisted in the preparation and service of warrants. On March 23, 2018, Your

Affiant was deputized as a DEA Task Force Officer pursuant to the authority granted to the Attorney General by Public Law 99-570, Section 1869 and delegated to the Administrator of the DEA, pursuant to Title 28, Code of Federal Regulations, subpart R, Section 0.100 et seq.

Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods employed by the controlled substance traffickers to smuggle and safeguard controlled substances, to distribute controlled substances, and to collect and launder the proceeds from the sale of controlled substances.

This Affidavit is submitted in support of a search warrant for the following premises:

i. **608 East Avenue F, Bismarck, North Dakota.**

ii. **1212 Park Avenue, Bismarck, North Dakota.**

The information provided in this Affidavit is based on my knowledge of the investigation and discussions with other law enforcement officers involved. Because this affidavit is being submitted for the limited purposes of supporting a search warrant, your affiant has not included each and every fact known concerning this investigation. It would be nearly impossible to include all known factual information in this affidavit. Instead, your affiant has provided a general overview of the investigation and has set forth only the specific facts necessary to establish probable cause to support the issuance of a search warrant authorizing the search of the premises located at **608 East Avenue F and 1212 Park Avenue, in Bismarck North Dakota.**

The following paragraphs contain evidence to support a finding of probable cause that the individual(s) in question is / are involved in the distribution of controlled substances, and the location(s) to be searched will contain evidence of this criminal activity. Where statements of others are set forth in this affidavit, they are set forth in substance and are not verbatim. The

information contained in this affidavit is based on your Affiant's own personal knowledge, information gained through training and experience, in addition to information made and obtained by other law enforcement agents, witnesses and documents.

## PROBABLE CAUSE

1. The Metro Area Narcotics Task Force ("MANTF") is investigating a drug trafficking organization operating within North Dakota, including Burleigh and Morton counties. The investigation also includes criminal acts which have occurred in other states, including California. The investigation concerns possible violations by known and unknown individuals of drug trafficking crimes including but not limited to conspiracy to manufacture, distribute, possess with the intent to distribute a controlled substance. The investigation relates to the sale and distribution of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. Methamphetamine is a synthetic drug classified as a central nervous system stimulant. The drug is primarily manufactured in Mexico in clandestine laboratories by large drug trafficking organizations, known as "Cartels." After the manufacturing process is completed, the methamphetamine is then smuggled into the United States for distribution. A common weight at the distribution point is one pound, or approximately 453 grams. Methamphetamine can be purchased in the border states, such as California, Arizona, and Texas for approximately $400 to $700 a pound. Methamphetamine can be sold in in North Dakota for approximately $8,000 to $11,000 per pound. Therefore, individuals involved in distributing methamphetamine by transporting the same from a border state to North Dakota stand to make a substantial profit. End users of methamphetamine will typically ingest between 1/4 gram and 1

gram at one time. Methamphetamine is typically smoked, injected or swallowed by end users. Typical end users of methamphetamine do not possess pound (or greater) quantities of methamphetamine as it is cost-prohibitive to acquire such quantities for end users who are not otherwise involved in distribution.

3. On October 1, 2024, Bismarck Police Department Task Force Officer (TFO) Olsen interviewed CI-24-2708, prior to CI-24-2708 becoming a Confidential Informant. During the interview CI-24-2708 advised he/she had been purchasing methamphetamine from a female that he/she knows as "Charice."

4. CI-24-2708 provided TFO Olsen with the phone number for the contact from their phone for "C. Reace" as 323-351-4055. A law enforcement data base records check determined the phone number belongs to Charice FIGUEIREDO. FIGUEIREDO is known to Your Affiant to have a history of being a mid-level narcotics distributor for multiple out of state drug trafficking organizations.

5. TFO Olsen showed CI-24-2708 a photo of Charice FIGUEIREDO. CI-24-2708 identified the photo as the individual they had been buying methamphetamine from. CI-24-2708 advised they have purchased fourteen (14) grams (one half ounce) from FIGUEIREDO approximately 6-7 times. Based on CI-24-2708's estimate, he/she had purchased 3-3.5 ounces of methamphetamine from FIGUEIREDO prior to becoming a confidential informant.

6. On October 2, 2024, CI-24-2708 contacted TFO Olsen and advised he/she had been in contact with FIGUEIREDO and could purchase methamphetamine from her. A controlled purchase operation was organized utilizing the CI-24-2708.

7. Standard procedures were followed while conducting controlled purchases utilizing CI-24-2708. These procedures include providing the CI with US Currency from the

Metro Area Narcotics Task Force (MANTF) buy funds. The serial numbers on the US currency were documented prior to the controlled purchase. CI-24-2708 and his/her vehicle was searched before and after the controlled purchase. These procedures were followed for all of the subsequently listed controlled purchases.

8. CI-24-2708 was provided the MANTF buy funds and fitted with a wireless audio recording and transmitting device. CI-24-2708 made contact with FIGUEIREDO and ultimately purchased fourteen (14) grams of methamphetamine from FIGUEIREDO, with the provided MANTF buy funds.

9. After selling methamphetamine to CI-24-2708, FIGUEIREDO was surveilled while she walked to the area of a bar in Mandan, North Dakota. FIGUEIREDO was then seen getting into the passenger seat of a tan Chrysler Town and Country Van bearing North Dakota License Plate 812DVZ. The driver of the vehicle was recognized by Law Enforcement as Kenneth RAMOS. RAMOS is a known methamphetamine distributor. Later that evening Law Enforcement observed the Chrysler Town and Country Van bearing North Dakota License Plate 812DVZ parked on the street near 608 East Avenue F in Bismarck, North Dakota. The residence at 608 East Avenue F has previously been identified by Law Enforcement as the residence of Kenneth RAMOS and Charice FIGUEIREDO.

10. On October 5, 2024, CI-24-2708 contacted TFO Olsen and advised he/she could purchase methamphetamine from FIGUEIREDO again.

11. A controlled purchase operation was organized to conduct a second controlled purchase of methamphetamine from FIGUEIREDO utilizing CI-24-2708. Ultimately, CI-24-2708 purchased twenty-eight (28) grams of methamphetamine from FIGUEIREDO on October 5, 2024, at a location in Bismarck, North Dakota.

12. Pre-surveillance was conducted on FIGUEIREDO and Kenneth RAMOS' known residence (608 East Ave F) in Bismarck, North Dakota, prior to the above referenced second controlled purchase.

13. FIGUEIREDO was observed leaving 608 East Avenue F in Bismarck, North Dakota, and arriving at the prearranged location of the controlled purchase a short time later. FIGUEIREDO was driving a gold in color Nissan Murano. FIGUEIREDO could be heard on the wireless transmitting device telling CI-24-2708 she had just purchased the vehicle.

14. On October 8, 2024, TFO Olsen was contacted by CI-24-2708 who again advised he/she could purchase methamphetamine from FIGUEIREDO.

15. A controlled purchase operation was organized to conduct a third controlled purchase of methamphetamine from FIGUEIREDO utilizing CI-24-2708. Ultimately CI-24-2708 purchased twenty-eight (28) grams of methamphetamine from FIGUEIREDO, at a location in Bismarck, North Dakota.

16. Prior to the controlled purchase TFO Szalek located a small amount of methamphetamine in the CI's vehicle. The methamphetamine was concealed inside of 3 pill capsules and totaled approximately .25 grams. The CI did not appear to be under the influence of methamphetamine or any other drug. The CI advised that the capsules were old and that they had forgot the capsules were in their vehicle.

17. TFO Olsen had seen the same pill bottle while searching the vehicle for the other referenced controlled purchases. TFO Olsen did not closely inspect the capsules to see they contained a small amount of methamphetamine on the prior occasions. TFO Olsen was able to recall there were three (3) capsules left in the pill bottle when the vehicle was searched for the first time. Based on the information provided by CI-24-2708, CI-24-2708's physical condition

and the previous searches of the vehicle, TFO Olsen believed that the capsules were old, and that CI-24-2708 had forgot they were in the vehicle.

18.    Prior to the third controlled purchase, Sergeant (Sgt.) Curtis notified TFO Olsen he had observed the same Chrysler Town and Country van which was seen during the first controlled purchase (ND License Plate 812DVZ) was parked in front of RAMOS and FIGUEIREDO's known residence, 608 East Avenue F in Bismarck, North Dakota.

19.    Sgt. Curtis saw a male fitting the description of RAMOS come to and from the residence and the Chrysler Town and Country van.

20.    During the third controlled purchase agents again conducted surveillance on RAMOS and FIGUEIREDO's known residence of 608 East Avenue F. FIGUEIREDO was again observed leaving the residence to meet with CI-24-2708. FIGUEIREDO was also surveilled back to the residence after the controlled purchase.

21.    On October 14, 2024, at approximately 1230 hours, TFO Olsen was contacted by CI 24-2708. CI 24-2708 advised he/she could purchase methamphetamine from Charice FIGUEIREDO, and could also purchase methamphetamine separately from Robert MARTELL. A short while later, CI 24-2708 advised he/she had received a call from MARTELL. CI-24-2708 reported MARTELL indicated that his source of supply (SOS) was also FIGUEIREDO, and it did not make sense for CI 24-2708 to purchase methamphetamine from him as they have the same SOS(FIGUEIREDO), and he (MARTELL) would charge CI-24-2708 more than FIGUEIREDO would.  A controlled purchase operation was organized to conduct a fourth controlled purchase of methamphetamine from FIGUEIREDO utilizing CI-24-2708. Ultimately CI-24-2708 purchased twenty-eight (28) grams of methamphetamine from FIGUEIREDO, at a location in Bismarck, North Dakota. During the course of the controlled purchase FIGUEIREDO

mentioned she had talked to MARTELL and knew CI-24-2708 was trying to get methamphetamine from MARTELL also. CI-24-2708 indicated to FIGUEIREDO he/she was just trying to get better prices. FIGUEIREDO stated to CI-24-2708 the methamphetamine was going to get more expensive because her SOS was leaving soon. Your Affiant believes the substance of this conversation is that FIGUEIREDO was telling the CI that Kenneth RAMOS will be leaving town soon and that FIGUEIREDO's prices for methamphetamine would be going up because of it.

22. On October 20, 2024, at approximately 2030 hours, TFO Olsen was contacted by CI 24-2708 who advised he/she could purchase methamphetamine from Charice FIGUEIREDO. A controlled purchase operation was organized to conduct a fifth controlled purchase of methamphetamine from FIGUEIREDO utilizing CI-24-2708. Prior to the controlled purchase, CI 24-2708 advised FIGUEIREDO texted him/her and told CI-24-2708 she had to meet with MARTELL first and would be running approximately 30 minutes late. Law Enforcement maintained surveillance on FIGUEIREDO and RAMOS's residence located at 608 East Avenue F in Bismarck and observed FIGUEIREDO leaving in her Nissan Murano. A short while later Law Enforcement observed FIGUEIREDO arrive at Rob MARTELL's shop located at 332 North 35th Street, Unit Fourteen, in Bismarck. MARTELL is a known distributor of methamphetamine and has been established as a downline distributor for Charice FIGUEIREDO. MARTELL has previously been convicted in Federal court in the District of North Dakota for distribution of methamphetamine. Soon after arriving at MARTELL's shop, FIGUEIREDO left.

23. At approximately 2159 hours, CI-24-2708 was directed by FIGUEIREDO to go to a church parking lot near the intersection of 6th Street and Avenue F in Bismarck.

24. FIGUEIREDO was observed arriving back at 608 East Avenue F, exiting her vehicle, entering the front door of the residence, and then leaving her residence a few moments later. FIGUEIREDO was then observed driving to and parking in the parking lot of McCabe Lutheran Church located at 6th Street and East Avenue F in Bismarck, approximately one-half block from her and RAMOS' home. Ultimately CI-24-2708 purchased twenty-eight (28) grams of methamphetamine from FIGUEIREDO in or near the parking lot of McCabe Lutheran Church located at 6th Street and East Avenue F in Bismarck, North Dakota.

25. During all of the above referenced controlled purchases, CI-24-2708 communicated with FIGUEIREDO via cell phone.

26. Law Enforcement has observed RAMOS driving FIGUEIREDO after a controlled purchase, has observed RAMOS at 608 East Ave F, and has observed RAMOS driving the Chrysler Town and Country van to/from 608 East Avenue F. Law Enforcement has also observed RAMOS coming and going from 608 East Avenue F in a black in color Chevrolet Suburban bearing North Dakota license plate number 673 EJW. On October 21, 2024, Law Enforcement observed RAMOS at his shop located at 1212 Park Avenue in Bismarck with his Chevrolet Suburban bearing North Dakota license plate number 673 EJW.

27. On October 25, 2024, CI-24-2708 was directed to contact FIGUEIREDO and make arrangements for a controlled purchase. CI-24-2708 indicated FIGUEIREDO did not respond. CI-24-2708 then contacted MARTELL. MARTELL indicated to CI-24-2708 he is out of methamphetamine.

28. A check of RAMOS' known license plates in a nationwide License Plate Reader (LPR) database indicated RAMOS' Chevrolet Suburban bearing North Dakota license plate number 673 EJW left North Dakota on October 23, 2024. The route of LPR hits on RAMOS'

Suburban (673 EJW) indicated he travelled from North Dakota to the area of the Nevada and California border, near Las Vegas. A registered LPR hit showed the vehicle near the Nevada / California border on October 24, 2024, at approximately 6:00 pm.

29. A check of an opensource Law Enforcement data bases showed a phone number for RAMOS of (661) 934-3922 (the "target number"). On October 25, 2024, Your Affiant subpoenaed T-Mobile for records for the target number. On October 26, 2024, T-Mobile responded to the subpoena indicating Kenneth RAMOS is the owner of the target number.

30. RAMOS has a lengthy criminal history out of California which includes multiple weapons offenses. In 2020, RAMOS was arrested by San Bernardino County Sheriff's Department with approximately five (5) pounds of methamphetamine and a handgun.

31. Based on the above information Your Affiant believes that Kenneth RAMOS is the source of supply for FIGUEIREDO.

32. On October 28, 2024, Your Affiant applied for and was granted a Trap and Trace, Pen Register, and GPS tracking on RAMOS's phone (the target number). On October 29, 2024, T-Mobile began sending data on the location of RAMOS's phone. At that time the data indicated the phone was in or near Littlerock, California. RAMOS has an address of 37417 96th Street East, Littlerock, California, listed on previous vehicle registration in North Dakota.

33. On November 10, 2024, Your Affiant observed the location data ("ping") being received on RAMOS's phone indicated the phone was moving eastbound. Your Affiant monitored the location of the ping throughout the day and observed the ping moved from the area of Littlerock California along the interstate highway system through Nevada, Utah, and into Colorado, as of 9:00 pm on November 10, 2024.

34. In the evening hours of November 10, 2024, CI 24-2708 was instructed to contact FIGUEIREDO and inquire if she had any methamphetamine for sale. At approximately 8:05pm on November 10, 2024, FIGUEIREDO responded to CI 24-2708 "I wont be good until tomorrow." Based on training and experience, your Affiant believed this statement indicated that FIGUEIREDO would have methamphetamine for sale again on November 11, 2024. This timeframe coincided with RAMOS's expected return to North Dakota.

35. On November 11, 2024, at 12:31pm a traffic stop was conducted on a motor vehicle in which RAMOS was an occupant. The vehicle was identified as a 2023 Cadillac Escalade, New Mexico License plate RNT 591, registered to EAN holdings (Enterprise car rentals). The vehicle was traveling northbound on Highway 6 in Morton County, North Dakota. At the time of the traffic stop your Affiant interviewed RAMOS as other law enforcement officers searched the vehicle. RAMOS was advised of his Miranda warnings by your Affiant. While your Affiant was interviewing RAMOS, other officers located three large metal tubes which were welded closed at both ends in the back of the vehicle. Officers could tell by tipping the tubes sideways that there was something concealed inside. Your Affiant asked RAMOS how much prison time he thought he was going to get for what was in the tubes. RAMOS responded "20-30 years." Your Affiant took this to mean there were controlled substances concealed in the metal tubes. RAMOS requested to leave the area of the traffic stop, to continue the interview elsewhere.

36. Ultimately the tubes were taken to the Metro Area Narcotics Taks Force where Law Enforcement Officers utilized electric angle grinders to cut off the ends of the tubes. Law Enforcement agents located a total of approximately twenty-nine (29) pounds (or, approximately 13,137 grams) of methamphetamine inside the three metal tubes. Based on the prices CI was

paying to FIGUEIREDO per ounce, your Affiant estimates the twenty-nine pounds of methamphetamine seized has an approximate street value of $232,000.

37. On November 11, 2024, RAMOS was booked into the Burleigh County Detention Center. While in custody TFO Olsen began monitoring RAMOS's phone calls. TFO Olsen was able to determine RAMOS was talking to FIGUEIREDO. The number that RAMOS called, as well as FIGUEIREDO'S voice, are recognizable to TFO Olsen. RAMOS told FIGUEIREDO that she needs to go to his shop. RAMOS described that the keys for the shop were in a drawer in the basement of the residence (608 East Avenue F). RAMOS told FIGUEIREDO to throw away his "old tools." RAMOS double checked with FIGUEIREDO that she knew what he was talking about. FIGUEIREDO indicated that she does. RAMOS asked FIGUEIREDO how many bags there are. FIGUEIREDO tells him 3 or 4. Based on the context of the investigation, TFO Olsen believes RAMOS is instructing FIGUEREDO to destroy or conceal contraband.

38. During the course of this investigation, RAMOS has been observed multiple times both at his residence at 608 East Avenue F, Bismarck, North Dakota, and at his shop located at 1212 Park Avenue in Bismarck, North Dakota. FIGUEIREDO has been observed coming and going from 608 East Avenue F in Bismarck, North Dakota, immediately before and after delivering controlled substances. The night before RAMOS left North Dakota, on or around October 23, 2024, he was observed at his shop located at 1212 Park Avenue in Bismarck. At that time, RAMOS was observed with the front grill and bumper of his Suburban removed. Your Affiant is aware that it is common for drug traffickers to remove parts from a motor vehicle in order to access hidden natural voids inside the vehicle not only for the purpose of concealing controlled substances but also for the purpose of concealing the proceeds of the distribution of controlled substances for transportation back to the source state.

39. Although a large amount of methamphetamine has been seized from RAMOS, Your Affiant believes based on his training and experience that evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 1956, will be found at the identified locations (608 East Avenue F and 1212 Park Avenue in Bismarck, North Dakota) for the following reasons: (1) RAMOS has been in contact with multiple individuals via jail calls, to include FIGUEIREDO, and at least two other unknown individuals, directing them to move, and/or destroy items, or to provide keys to another individual, seemingly for the same purpose; and (2) although RAMOS was found in possession of a large amount of methamphetamine, no other common items typically needed for the furtherance of a distribution of controlled substances were located in the vehicle RAMOS was traveling in. Your Affiant has conducted and or participated in hundreds of investigations in drug trafficking organizations, in nearly all of those cases the conspirators used and maintained records of their distribution activities, maintained records of their money laundering activities (usually in the form of money wire receipts), almost without exception drug trafficking organizations have items used to breakdown and repackage controlled substance for distribution, to include scales, baggies, and other packaging materials. Specifically in this case, RAMOS was in possession of twenty-nine one-pound packages of methamphetamine, individually heat sealed, and hidden inside of metal tubes which were welded closed. RAMOS would need to possess the tools to remove the methamphetamine from the tubes, scales to weigh it, and baggies to repackage it. Your Affiant knows from the controlled purchase in this case that FIGUEIREDO was selling methamphetamine in ounces quantities or less.

40. From training and experience, Your Affiant knows that members of Drug Trafficking Organizations often use multiple locations, such as homes, shops, storage units, and

businesses, to store controlled substances and the proceeds of the distribution of controlled substances in order to separate proceeds and contraband (drugs and paraphernalia) from the location the trafficker stays or sells controlled substances from so that not all of the contraband and/or proceeds is seized or located should the trafficker be encountered by law enforcement agents.

41. Your Affiant has conducted several investigations involving drug traffickers who come to North Dakota to sell drugs from out of state. Many of these drug traffickers come from "source" cities in the east such as Milwaukee, Chicago, and Detroit, among others. Drug traffickers also come from the west and southwest from California and Arizona. This is mostly due to the fact that drug traffickers know they stand to make good profit by selling drugs due to the high price drugs yield in North Dakota. Often times, when drug traffickers come to North Dakota to sell drugs, they conceal those drugs both on their person, and inside hidden compartments in vehicles. Your Affiant has conducted investigations where individuals hide controlled substances on their person, in their under garments, and sometimes in their body cavities.

42. Based upon my training, education, and experience in conducting narcotics investigations, your Affiant is aware that persons who traffic in controlled substances generally keep records, notes, receipts, ledgers, logs of buyers and sellers, transaction amounts, and other similar documentation of their drug trafficking activity. Drug traffickers also frequently possess various drug paraphernalia to aid in their drug trafficking activities, such as scales to weigh out quantities of controlled substances, or smoking devices and hypodermic needles and syringes to ingest controlled substances.

43. Based upon my training, education, and experience in conducting narcotics investigations, your Affiant is also aware persons who traffic in controlled substances utilize cellular phones and other electronic devices to engage in drug trafficking activity, including through text messaging, social media, and phone calls. I am aware that cellular telephones and other electronic devices have various features that save information, data, and images on the device that are later accessible to the user. That information includes, but is not limited to, calls made, calls received, missed calls, text messages sent and received, contact lists, and photographic and video images. Some of this information can be maintained on media storage devices that may be inserted into the cellular phone or device. Further, Your Affiant has participated in numerous investigations related to the distribution of illicit opiate pills and other controlled substances wherein cellular phones have been utilized by these drug traffickers. During searches of cellular telephones seized from those individuals, the phones almost always have conversations in text messages and other messaging applications, such as "Facebook Messenger" and "WhatsApp," where users of the phone are arranging drug deals, and communicating with drug purchasers or sources of supply. Your Affiant has also observed numerous photos on such cellular phones where drug traffickers take photos and/or videos of themselves with large amounts of US Currency, of their drug products, and of firearms. Often times, these drug traffickers will send photos of their products to the people purchasing them. They will also often times request those who are laundering drug proceeds to send images of money wire transactions or receipts, or deposit record in financial institutions. Further, in most controlled purchase of drugs by law enforcement agents using confidential informants in recent years, cellular phones have been utilized to arrange meeting locations and meeting times, and to discuss drug weights, quantities, and/or prices.

44. Also based on my training and experience, consultation with other law enforcement officers experienced in investigations regarding narcotics trafficking, and the forensic examination of computers, computer tablets, cellular telephones and digital media, I have learned the following:

   a. A thorough search of computers, computer tablets, cellular phones and digital media for evidence of instrumentalities of crime commonly requires a qualified expert to conduct the search in a laboratory or another controlled environment.

   b. Searching computers, computer tablets, cellular phones and digital media is a highly technical process which requires specific expertise and specialized equipment. There are so many types of digital media in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with personnel who have specific expertise in the type of computer, computer tablet, cellular phone and digital media that is being searched.

   c. Searching computers, computer tablets, cellular phones and digital media requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

45. Therefore, in searching for evidence, fruits, and instrumentalities of criminal activity within cellular telephones or other digital or electronic media, those items will need to be transported to an appropriate law enforcement laboratory for review to determine whether the contents thereof contain evidence and instrumentalities of violations of federal law. These items and the contents thereof will be reviewed by appropriately trained personnel in order to extract and seize any data that relates to the fruits, instrumentalities, and evidence in violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Section 1956.

46. As part of this request, I am requesting authorization to seize any cellular phones, including all media storage devices within such cellular phones, associated with Kenneth RAMOS and/or Charice FIGUEIREDO located within the premises of 608 East Avenue F and 1212 Park Avenue, in Bismarck North Dakota, and to search these cellular phones and media storage devices for all records, data, and images, in whatever form and by whatever means they have been created or stored on such cellular telephones and storage devices, for evidence relating to violations of Title 21, USC §§ 841(a) and 846, and Title 18, USC § 1956, involving Kenneth RAMOS, Charice FIGUEIREDO and/or any unknown or yet to be identified subjects, including lists of drug customers and related identifying information; types, amounts and prices of drugs purchased, used or trafficked, or offered for purchase or sale, as well as dates, places, and amounts of specific transactions; any information related to sources of narcotic drugs, including names, addresses, phone numbers, images, or any other identifying information; photographic or video images of drugs, drug paraphernalia, money or monetary instruments, drug use or drug transactions; any information recording the travels of the Kenneth RAMOS, Charice FIGUEIREDO, and their co-conspirators whose identities are known or unknown, or yet to be identified; and any financial account and transaction information.

47. Based on the above information, Your Affiant believes the Kenneth RAMOS, Charice FIGUEIREDO, and their coconspirators are actively involved in the distribution of controlled substances in North Dakota, and elsewhere. Your Affiant believes that there is evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, and conspiracy) and/or Title 18, United States Code, Section 1956 (money laundering) inside and on the premises located at **608 East Avenue F and 1212 Park Avenue, in Bismarck North Dakota,** and there is probable cause to search these locations for the items described in Exhibit B, which is incorporated into this affidavit by reference.

48. I hereby request the issuance of a search warrant for the property and person noted herein for evidence and instrumentalities more particularly described in Exhibit B.

Furthermore, Your Affiant sayeth naught.

David Stewart
DEA Task Force Officer

Subscribed and sworn to via telephone or other reliable electronic means pursuant to Rule 41(d) and 4.1, F.R.Crim.P., this _13_ day of November, 2024.

Clare R. Hochhalter
United States Magistrate Judge